1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11

JOE HAND PROMOTIONS, INC.,

Case No.  13-cv-02725-BAS(JLB)

Plaintiff,

12

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

13

v.

14

MARC S. BRAGG, et al.,

**(ECF NO. 14)**

15

Defendants.

16
17
18

On November 13, 2013, Plaintiff Joe Hand Promotions, Inc. ("Plaintiff"), a

19

commercial distributor and licensor of sporting events, commenced this action

20

against Defendants Marc S. Bragg and Cynthia Motsch, both individually and

21

doing business as Sally and Henry's Doghouse Bar & Grill (collectively,

22

"Defendants"), alleging violations of the Communications Act of 1934, as

23

amended, 47 U.S.C. §§ 605, *et seq*., the Cable & Television Consumer Protection

24

and Competition Act of 1992, as amended, 47 U.S.C. §§ 553, *et seq*., California

25

Business and Professions Code §§ 17200, *et seq*. ("UCL"), and conversion.

26

Defendants now move to dismiss Plaintiff's Complaint under Federal Rules of

27

Civil Procedure 12(b)(1), (b)(6) and (b)(7).

28

The Court finds this motion suitable for determination on the papers

submitted and without oral argument.  *See* Civ. L.R. 7.1(d)(1).  For the following reasons, the Court **DENIES** Defendants' motion to dismiss.

## I.    BACKGROUND

This action arises out of events involving the broadcast of an "Ultimate Fighting Championship" program on November 17, 2012 at Sally and Henry's Doghouse Bar and Grill at 3515 5th Avenue, San Diego, CA 92103 (the "Doghouse Bar").  (ECF No. 1 ("Complaint") at ¶ 18.)

Plaintiff is a Pennsylvania corporation with its principal place of business located at 407 E. Pennsylvania Blvd., Feasterville, Pennsylvania 19053.  (*Id*. at ¶ 6.)  Defendants Marc S. Bragg and Cynthia Motsch are named in the Complaint individually and doing business as the Doghouse Bar.  Plaintiff alleges Defendants Bragg and Motsch were the owners, operators, licensees, permittees, persons in charge and/or individuals with dominion, control, oversight, and management of the Doghouse Bar on November 17, 2012, the night of the broadcast.  (*Id*. at ¶¶ 7-10.)  Plaintiff additionally alleges that Defendants Bragg and Motsch had the right, ability, and obligation to supervise the activities of the Doghouse Bar during the broadcast.  (*Id*. at ¶¶ 11-14.)

Plaintiff further alleges that it was granted exclusive contractual rights to the "nationwide commercial distribution (closed-circuit)" of *Ultimate Fighting Championship 154: Georges St. Pierre v. Carlos Condit*, telecast nationwide on November 17, 2012, including "all under-card bouts and fight commentary encompassed in the television broadcast of the event" (the "*Program*").  (*Id*. at ¶ 18.)   Plaintiff alleges that it also "entered into subsequent sublicensing agreements with various commercial entities throughout North America," and granted these commercial entities limited sublicensing rights to publicly exhibit the *Program* within their respective commercial establishments.  (*Id*. at ¶ 19.)

In its Complaint, Plaintiff alleges it did not "authorize transmission, interception, reception, divulgence, exhibition or display of the *Program* to the

1   general public, persons at large" or to the Doghouse Bar.  (*Id.* at ¶ 38.)  However,
2   Plaintiff alleges Defendants "[w]ith full knowledge that the *Program* was not to be
3   intercepted, received, published, divulged, displayed, and/or exhibited by
4   commercial entities unauthorized to do so," did unlawfully intercept and exhibit
5   either through direct action or through actions of employees or agents directly
6   imputable to Defendants.  (*Id.* at ¶ 21.)  Lastly, Plaintiff alleges Defendants acted
7   "willfully and for purposes of direct and/or indirect commercial advantage and/or
8   private financial gain," and that transmission of the *Program* resulted in increased
9   profits to the Doghouse Bar.  (*Id.* at ¶¶ 16, 22.)

10  In its Complaint, Plaintiff asserts the following four causes of action: (1)
11  violation of 47 U.S.C. § 605, (2) violation of 47 U.S. § 553, (3) violation of the
12  UCL, and (4) conversion.

## II.   MOTION TO DISMISS PURSUANT TO FRCP RULE 12(b)(1)

### A.   Legal Standard

15  Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may
16  move to dismiss based on the court's lack of subject matter jurisdiction.  *See* Fed.
17  R. Civ. P. 12(b)(1).  In such a motion, the plaintiff bears the burden of establishing
18  the court's subject matter jurisdiction.  "A federal court is presumed to lack
19  jurisdiction in a particular case unless the contrary affirmatively appears."  *Stock*
20  *West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation
21  omitted).  A Rule 12(b)(1) jurisdictional attack may be either facial or factual.
22  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

23  In a facial attack, the complaint is challenged as failing to establish federal
24  jurisdiction, even assuming that all of the allegations are true and construing the
25  complaint in light most favorable to the plaintiff.  *See Safe Air for Everyone v.*
26  *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Thus, a motion to dismiss for lack of
27  subject matter jurisdiction will be granted if the complaint on its face fails to allege
28  sufficient facts to establish jurisdiction.  *See Savage v. Glendale Union High Sch.*,

1  343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

2      "By contrast, in a factual attack, the challenger disputes the truth of the

3  allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe*

4  *Air for Everyone*, 373 F.3d at 1039.  "[T]he district court is not restricted to the

5  face of the pleadings, but may review any evidence, such as affidavits and

6  testimony, to resolve factual disputes concerning the existence of jurisdiction."

7  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  "Once the moving

8  party has converted the motion to dismiss into a factual motion by presenting

9  affidavits or other evidence properly brought before the court, the party opposing

10  the motion must furnish affidavits or other evidence necessary to satisfy its burden

11  of establishing subject matter jurisdiction." *Savage*, 343 F.3d at 1039 n.2.

12      **B.    Discussion**

13      Defendants initially maintain this action should be dismissed under Federal

14  Rule of Civil Procedure 12(b)(1) for lack of Article III standing.  (ECF No. 14-1

15  ("Mot.") at pp. 6-15). Article III of the Constitution "requires federal courts to

16  satisfy themselves that the plaintiff has alleged such a personal stake in the

17  outcome of the controversy as to warrant *his* invocation of federal-court

18  jurisdiction." *Summers v. Earth Island Inst*., 555 U.S. 488, 493 (2009) (internal

19  quotation marks and citation omitted, emphasis in original).  Absent Article III

20  standing, a court must dismiss an action for lack of subject matter jurisdiction.

21  *Maya v. Centex Corp*., 658 F.3d 1060, 1067 (9th Cir. 2011).

22      To satisfy Article III's standing requirements, a plaintiff must allege (1) he

23  or she suffered an injury-in-fact that is concrete, particularized, and actual or

24  imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the

25  injury is likely to be redressed by a favorable court decision.  *Maya*, 658 F.3d at

26  1067 (citation omitted).  "[T]he threshold question of whether plaintiff has

27  standing (and the court has jurisdiction) is distinct from the merits of his claim.

28  Rather, the jurisdictional question of standing precedes, and does not require,

analysis of the merits." *Id.* at 1068 (internal quotation marks and citation omitted). "Each element of standing must be supported…with the manner and degree of evidence required at the successive stages of the litigation." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  For purposes of a motion to dismiss for want of standing, the trial court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Id.* (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 1068 (internal quotations and citations omitted).

Defendants argue that Plaintiff cannot allege the requisite injury-in-fact, *i.e.*, invasion of a legally protected interest.  (Mot. at 6.)  Specifically, Defendants argue Plaintiff lacks standing under the Copyright Act, which allows only the legal or beneficial owner of an exclusive right under the copyright to sue for infringement. (*Id.* at 6-15.)  The Complaint, however, does not allege copyright infringement. Plaintiff's primary causes of action arise under 47 U.S.C. § 553 ("Section 553") and 47 U.S.C. § 605 ("Section 605").   Section 553 prohibits persons from receiving or assisting in intercepting or receiving "any communications service offered over a cable system, unless specifically authorized by law."  47 U.S.C. § 553(a)(1).   Section 605 similarly prohibits the unauthorized interception and publication or use of radio communications, including satellite broadcasts.   47 U.S.C. § 605(a); *DirecTV v. Webb*, 545 F.3d 837, 843 (9th Cir. 2008); *J&J Sports Prods., Inc. v. Walia*, 2011 WL 902245 (N. D. Cal. Mar. 14, 2011) ("*Walia*").

For purposes of Article III standing under Section 553 and Section 605, Plaintiff has sufficiently alleged a concrete and particularized injury-in-fact and that the injury is fairly traceable to the challenged conduct.  Plaintiff alleges in its Complaint that it "was granted the exclusive nationwide commercial distribution

1  (closed-circuit) rights" to the *Program* and thereafter entered into sublicensing

2  agreements with various commercial entities to enable them to publicly exhibit the

3  *Program* in their commercial establishments. (Complaint at ¶¶ 18-19.)   Plaintiff

4  further alleges Defendants intercepted, received, published, divulged, displayed,

5  and/or exhibited the *Program* on a certain date at a certain location without

6  authorization, and it suffered harm.  (*Id*. at ¶¶ 21, 34, 40, 43.)  These allegations are

7  sufficient to meet the first two requirements of Article III standing.  *See J&J Sports*

8  *Prods., Inc. v. Alvarez*, 2013 WL 6070412, at *4 (E.D. Cal. Nov. 18, 2013)

9  ("*Alvarez*"); *see also J&J Sports Prods., Inc. v. Mendoza-Govan*, 2011 WL

10  1544886 at *3 (N.D. Cal. Apr. 25, 2011).  Furthermore, the alleged injury is likely

11  to be redressed by a favorable court decision because Plaintiff's requested

12  monetary damages would serve to compensate it for its alleged damages.  *Id*.

13  Accordingly, for purposes of pleading, the Court finds Plaintiff has sufficiently

14  alleged standing under Article III.[1]

15      Defendants subsequently argue that Plaintiff lacks statutory standing under

16  Section 605 and Section 553.  (Mot. at pp. 6-15; ECF No. 20 ("Reply") at pp. 2-7.)

17  Pursuant to these sections, any "aggrieved" person may bring a civil action in

18  district court.  47 U.S.C. § 605(e)(3)(A), § 553(c)(1).  The phrase "any person

19  aggrieved" is broadly defined in Section 605 as "any person with proprietary rights

20  in the intercepted communication."  47 U.S.C. §§ 605(d)(6).  Plaintiff has alleged a

21  sufficient proprietary right in the *Program* to satisfy this standard.  (*See* Complaint

---

23  [1]    Defendants request the Court take judicial notice of the U.S. Patent and
24  Trademark Office federal registrations, U.S. Copyright Registrations, and SEC
    filings cited in its motion to dismiss.  (Mot. at pp. 5-6.)  "[A] court may take
25  judicial notice of matters of public record without converting a motion to dismiss
26  into a motion for summary judgment, as long as the facts noticed are not subject to
    reasonable dispute."  *Intri-Plex Technol., Inc. v. Crest Group, Inc*., 499 F.3d 1048,
27  1052 (9th Cir. 2007).  As the Court does not rely on these documents in deciding
    this motion, the Court denies the request for judicial notice of these documents as
28  moot.

1   at ¶ 18.)  Section 553 does not explicitly define the term "aggrieved person," but

2   courts in the Ninth Circuit regularly hold that "a program distributor with exclusive

3   distribution rights," such as Plaintiff in this matter, is a person aggrieved within the

4   meaning of Section 553.  *J&J Sports Prods., Inc. v. Nguyen*, 2014 WL 60014, at

5   *5 (N.D. Cal. Jan. 7, 2014) ("*Nguyen*"); *see also Alvarez*, 2013 WL 6070412, at *

6   5 (interpreting broadly the phrase "any person aggrieved shall include…").  Here,

7   Defendants argue that Plaintiff has not sufficiently alleged its rights were exclusive

8   to confer standing under Section 605 and Section 553.   (Mot. at pp. 9-13.)

9   However, Section 605 and Section 553 do not require that the proprietary interest

10  be exclusive.  *See J&J Sports Prods., Inc. v. Benitez*, 2013 WL 5347547, at *5

11  (E.D. Cal. Sept. 23, 2013).   Moreover, Defendants do not cite to a single case

12  brought under Section 553 or Section 605 requiring that the proprietary interest be

13  exclusive.   Accordingly, the Court finds Plaintiff has alleged statutory standing

14  under Section 605 and Section 553.

15         Under the guise of standing, Defendants also maintain that Plaintiff did not

16  sufficiently allege it had ownership or possession of the *Program* for purposes of

17  conversion.  (Mot. at pp. 14-15.)  However, intangible property rights, such as the

18  right to program distribution, are sufficient to support the ownership or possession

19  element of conversion under California law.  *See Don King Prods./ Kingvision v.

20  Lovato*, 911 F. Supp. 419, 423 (N.D. Cal. 1995).  Defendants' argument regarding

21  standing for purposes of the UCL claim (Mot. at p. 15) is derivative of the

22  remaining claims, and is therefore rejected for the same reasons.  Accordingly, the

23  Court finds the Complaint sufficiently alleges the requisites of standing as to

24  Plaintiff's conversion and UCL claims.

25  ## III.   MOTION TO DISMISS PURSUANT TO FRCP RULE 12(b)(6)

26          ### A.   Legal Standard

27          A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

28  Procedure tests the legal sufficiency of the claims asserted in the complaint.  Fed.

R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir.2001).  The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party.  *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir.1996).  To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*").  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*") (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alteration in original).  A court need not accept "legal conclusions" as true.  *Iqbal*, 556 U.S. at 678.  Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss.  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  However, documents specifically identified in the complaint whose authenticity is not questioned by parties may also

1  be considered.  *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995)

2  (superseded by statutes on other grounds).  Moreover, the court may consider the

3  full text of those documents, even when the complaint quotes only selected

4  portions.  *Id.*  It may also consider material properly subject to judicial notice

5  without converting the motion into one for summary judgment.  *Barron v. Reich*,

6  13 F.3d 1370, 1377 (9th Cir. 1994).

7  **B.  Discussion**

8  Defendants maintain that Plaintiff fails to state claims against Defendants

9  Bragg and Motsch in their individual capacities.  (Mot. at pp. 15-20.)  Specifically,

10  Defendants argue the Complaint fails to allege any basis to pierce the "corporate

11  veil" of the Doghouse Bar, a limited liability company, and that the Complaint fails

12  to allege how the signal was intercepted by Defendants Bragg and Motsch, how

13  these individuals converted Plaintiff's property, or any specific acts by the

14  individual Defendants to intercept the signal.  (*Id.*)

15  **1.  *Section 553 and Section 605***

16  For purposes of Section 553 and Section 605, corporate veil law does not

17  apply.  Most, if not all, courts addressing the issue of individual liability under

18  Section 553 and Section 605 have applied a standard of individual liability

19  premised on copyright law.  *See Walia*, 2011 WL 902245 at *3 (citing cases); *see

20  also J&J Sports Prods., Inc. v. Betancourt*, 2009 WL 3416431, at *2 (S.D. Cal.

21  Oct. 20, 2009); *Joe Hand Promotions, Inc. v. Hart*, 2012 WL 1289731, at *3 (S.D.

22  Fla. April 16, 2012).  Under this standard, a plaintiff must show "(1) the individual

23  had a right and ability to supervise the infringing activities and (2) had an obvious

24  and direct financial interest in those activities."  *Walia*, 2011 WL 902245 at *3.  In

25  order to satisfy the first prong, a plaintiff "must allege more than the shareholder's

26  right and ability to supervise generally."  *Id.*  The plaintiff "must allege that the

27  defendant had supervisory power over the infringing conduct itself."  *Id*.

28  Furthermore, to satisfy the second prong, "a plaintiff cannot merely allege that the

1  shareholders profit in some way from the profits of the corporation." *Id.* In other

2  words, "an individual's status as a shareholder or officer is insufficient to show

3  that he or she had the requisite supervision authority or financial interest to warrant

4  individual liability." *Id.* "[I]n order to hold a shareholder of an LLC liable for the

5  LLC's infringing conduct, a plaintiff must allege facts that show the shareholder

6  was "a moving active conscious force" behind the infringing act itself and that the

7  shareholder derived direct financial benefit from the infringing conduct above and

8  beyond a generic linkage between the profits of the shareholder and those of the

9  LLC." *Id.*

10      Here, the Complaint alleges Defendants Bragg and Motsch are each owners,

11  and/or operators, and/or licensees, and/or permittees, and/or persons in charge,

12  and/or individuals with dominion, control, oversight and management of the

13  Doghouse Bar.  (Complaint, ¶¶ 7-8.)   The Complaint also alleges Defendants

14  Bragg and Motsch are each identified on the California Alcoholic Beverage and

15  Control license issued for the Doghouse Bar ("Liquor License") and therefore had

16  the obligation to supervise its activities, including the unlawful interception of the

17  *Program*, and the obligation to ensure the Liquor License was not used in violation

18  of the law.  (*Id.* at ¶¶ 9-10, 13-14.)   The Complaint further alleges Defendants

19  Bragg and Motsch each "had the right and ability to supervise" the activities of the

20  Doghouse Bar on November 17, 2012, which included the interception of the

21  *Program*.  (*Id.* at ¶¶ 11-12.)   Additionally, the Complaint alleges, on information

22  and belief, that Defendants Bragg and Motsch "specifically directed the employees

23  of [the Doghouse Bar] to unlawfully intercept and broadcast Plaintiff's *Program* at

24  [the Doghouse Bar] or that the actions of the employees of [the Doghouse Bar] are

25  directly imputable to Defendants [Bragg and Motsch] by virtue of their

26  acknowledged responsibility for the actions of [the Doghouse Bar]."  (*Id.* at ¶ 15.)

27  Lastly, the Complaint alleges the unlawful broadcast of the Program, "as

28  supervised and/or authorized by Defendants [Bragg and Motsch], resulted in

1   increased profits for [the Doghouse Bar]," and both of them acted "willfully and

2   for purposes of direct and/or indirect commercial advantage and/or private

3   financial gain." (*Id*. at ¶¶ 16, 22.)

4        Courts frequently find such allegations, and even less, sufficient to state a

5   claim for individual liability. *See e.g., Joe Hand Promotions, Inc. v. Caddyshanks,*

6   *LLC*, 2013 WL 869527, at *4 (M.D. Fla. March 7, 2013); *Joe Hand Promotions,*

7   *Inc. v. Hurley*, 2011 WL 6727989, at *2 (S.D. Ill. Dec. 21, 2011); *J & J Sports*

8   *Prods., Inc. v. Dougherty*, 2012 WL 2094077, at *2-3 (E.D.Pa. June 11, 2012).

9   The Complaint contains allegations above and beyond simply asserting Defendants

10  Bragg and Motsch were the owners of the Doghouse Bar. *Cf J & J Sports Prods.,*

11  *Inc. v. 291 Bar & Lounge, LLC*, 648 F.Supp.2d 469, 473 (E.D.N.Y. 2009) (holding

12  that mere ownership of the offending entity was insufficient to establish individual

13  liability).    Moreover, the allegation that Defendants Bragg and Motsch are

14  identified on the Doghouse Bar's Liquor License is a specific, relevant fact beyond

15  mere speculation. *See J & J Sports Prods., Inc. v. Q Cafe, Inc.*, 2012 WL 215282,

16  at *4 (N.D.Tex. Jan. 25, 2012) (holding defendant individually liable solely "due to

17  her ownership of the Establishment's alcohol license"); *Nguyen,* 2014 WL 60014,

18  at *9 (finding allegation that individual defendant was the liquor license holder

19  highly relevant to establishing individual liability); *Kingvision Pay-Per-View Ltd.*

20  *v. Villalobos,* 554 F. Supp. 2d 375, 381 (E.D. N.Y. 2008) (considering evidence

21  that corporation's liquor license listed individual defendant in finding individual

22  liability on a default judgment).    Therefore, at the pleading stage, the Court finds

23  that such allegations are sufficient to state a claim upon which relief may be

24  granted against Defendants Bragg and Motsch in their individual capacities.

25            **2.    *Conversion***

26        Defendants further move to dismiss Plaintiff's conversion claim as to

27  Defendants Bragg and Motsch in their individual capacities.    To state a claim for

28  the tort of conversion under California law, a plaintiff must allege: "(1) ownership

or right to possession of property; (2) wrongful disposition of the property right of another; and (3) damages." *Kingvision Pay–Per–View, Ltd. v. Chavez*, 2000 WL 1847644, at *4 (N.D. Cal. Dec. 11, 2000) (citing *G.S. Rasmussen & Assoc. v. Kalitta Flying Serv.*, 958 F.2d 896, 906 (9th Cir. 1992)).  Plaintiff has adequately alleged facts to support these elements.  *See* Complaint at ¶ 18 ("Pursuant to contract, [Plaintiff] was granted the exclusive nationwide commercial distribution (closed-circuit) rights to [the *Program*]...."); ¶¶ 21-22 (each defendant, either through direct action or through actions of employees or agents directly imputable to the defendant unlawfully intercepted and published the *Program*); ¶¶ 34-35 (Plaintiff is entitled to damages).  *See also Walia*, 2011 WL 902245, at *5.

Under California law, members of a limited liability company ("LLC") are afforded the same limited liability as corporate shareholders.  *Id.*; Cal. Corp. Code § 17101(a).  Thus, a member of an LLC "will not be liable for torts in which he does not personally participate, of which he has no knowledge, or to which he has not consented." *Frances T. v. Village Green Owners Assn.*, 229 Cal.3d 490, 503 (1986) (citation omitted).  A member "will be immune unless he authorizes, directs, or in some meaningful sense actively participates in the wrongful conduct." *Id.* at 504; *see also The Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996).

Thus, to properly allege a cause of action for conversion against Defendants Bragg and Motsch individually, Plaintiff must plead facts giving rise to a plausible claim that Bragg and Motsch actively participated in some meaningful sense in the interception and publication of the program. *See Walia*, 2011 WL 902245, at *6. Here, Plaintiff alleges that on November 17, 2012, the night of the *Program*, Defendants Bragg and Motsch "specifically directed the employees of [the Doghouse Bar] to unlawfully intercept and broadcast Plaintiff's *Program* at [the Doghouse Bar] or that the actions of the employees of [the Doghouse Bar] are directly imputable to Defendants [Bragg and Motsch] by virtue of their

1    acknowledged responsibility for the actions of [the Doghouse Bar]."  (Complaint, ¶

2    15.)  The Court finds these allegations are sufficient to allege a cause of action for

3    conversion against Defendants Bragg and Motsch on an individual basis.

4                          **3.    *UCL***

5        Lastly, Defendants move to dismiss Plaintiff's claim alleging a violation of

6    the UCL against Defendants Bragg and Motsch in their individual capacities.  The

7    UCL prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal.

8    Bus. & Prof. Code § 17200.  When determining whether a practice is unlawful, the

9    UCL "borrows violations of other laws and treats them as unlawful practices that

10   the [UCL] makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los*

11   *Angeles Cellular Tel. Co*., 20 Cal. 4th 163, 180 (1999) (internal quotations and

12   citations omitted).  "A private plaintiff must make a twofold showing: he or she

13   must demonstrate injury in fact and a loss of money or property caused by unfair

14   competition."  *Hale v. Sharp Healthcare*, 183 Cal. App. 4th 1373, 1381 (2008)

15   (citation omitted).

16       Here, Plaintiff has alleged that Defendants engaged in an unlawful business

17   practice in violation of federal (Section 605 and Section 553) and state law

18   (conversion), suffered an injury in fact and a loss of money, which suffices to state

19   a claim under the UCL.  *See Nguyen,* 2014 WL 60014, at *9.  A member of an

20   LLC may be held personally liable for an LLC's violation of the UCL if "he or she

21   actively and directly participates in the unfair business practice."  *See Bangkok*

22   *Broad. & T.V. Co., Ltd. v. IPTV Corp*., 742 F.Supp.2d 1101, 1115 (C.D. Cal.

23   2010).  As previously discussed, for purpose of pleading, Plaintiff has sufficiently

24   alleged Defendants Bragg and Motsch actively and directly participated in the

25   alleged unfair business practice, *i.e*., intercepting and publishing the *Program* in

26   violation of Section 553, Section 605 and conversion.  Therefore, the Court finds

27   the allegations in the Complaint sufficient to allege a cause of action against

28   Defendants Bragg and Motsch in their individual capacities for a violation of the

1    UCL.

2    **IV.    MOTION TO DISMISS PURSUANT TO FRCP RULE 12(b)(7)**

3        **A.    Legal Standard**

4        Rule 12(b)(7) of the Federal Rules of Civil Procedure authorizes this Court

5    to dismiss an action if a plaintiff has failed "to join a party under Rule 19." Fed. R.

6    Civ. P. 12(b)(7).   Federal Rule of Civil Procedure 19(a)(1)(B) provides that a

7    person "must be joined as a party" if "in that person's absence, the court cannot

8    accord complete relief among existing parties."   Fed. R. Civ. P. 19(a)((1)(A).

9    Further, Federal Rule of Civil Procedure 19(a)(1)(B) provides that a person "must

10   be joined as a party" if "that person claims an interest relating to the subject of the

11   action and is so situated that disposing of the action in the person's absence may:

12   (i) as a practical matter impair or impede the person's ability to protect the interest;

13   or (ii) leave an existing party subject to a substantial risk of incurring double,

14   multiple,  or  otherwise  inconsistent  obligations  because  of  the  interest."

15   Fed.R.Civ.P. 19(a)(1)(B).  If that required person cannot be joined, then "the court

16   must determine whether, in equity and good conscience, the action should proceed

17   among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).

18       A motion to dismiss for failure to join an indispensable party requires the

19   court to engage in "three successive inquiries": (1) whether the absent party is

20   "necessary"; (2) whether it is "feasible" to join the absent, necessary party; and (3)

21   whether the absent party is "indispensable."  *EEOC v. Peabody W. Coal Co*., 610

22   F.3d 1070, 1078 (9th Cir. 2010).  The Rule 19 inquiry is "a practical one and fact

23   specific," and the party seeking dismissal has the burden of persuasion.  *Id.*

24       **B.    Discussion**

25       Defendants argue this action must be dismissed because Plaintiff failed to

26   join necessary parties, namely Zuffa, LLC ("Zuffa") and DirecTV.  In support of

27   this argument, Defendants claim the Doghouse Bar obtained a license and

28   subscription from DirecTV to display commercial content at the Doghouse Bar

– 14 –                              13cv2725

("Commercial Viewing Agreement").  (Mot. at p. 2 & Exhibit 6.)  Thereafter, Defendants ordered the *Program* from DirecTV pursuant to the Commercial Viewing Agreement.  (Mot. at Exhibits 6 and 7.)  Based on filings with the U.S. Patent and Trademark Office, Defendants also claim that Zuffa is the exclusive copyright holder of the *Program*.   (Mot. at p. 4.)

Defendants argue Zuffa is a "necessary party" because, as the exclusive copyright holder, Zuffa is the only party with standing to sue.  (Mot. at p. 24.) However, as discussed earlier, Zuffa is not the only party with standing to sue, and therefore must not be joined on that basis.  Defendants further assert Zuffa must be joined because "it has a direct legal interest in the alleged infringement of its copyright in the CONTENT." (Mot. at p. 24.)   Similarly, Defendants argue DirecTV is a "necessary party" because it has a direct legal interest in (1) "the alleged infringement [of] the product it distributed via its exclusive electronic closed circuit system," and (2) "ensuring the product it sells is free of infringement claims under the California Uniform Commercial Code."  (Mot. at p. 24.)

DirecTV and Zuffa are not indispensible parties to this case. Courts have routinely declined to find the cable or satellite provider or copyright holder to be an indispensable party in Section 553 and Section 605 actions.  *See J&J Sports Prods., Inc. v. Live Oak County Post No. 6119 Veterans of Foreign Wars*, 2009 WL 483157, at *4 (S.D. Tex. Feb. 24, 2009) (finding DirecTV is not an indispensable party and denying defendant's motion to dismiss); *J & J Sports Prods., Inc. v. Coyne*, 2011 WL 227670, at *2 (N.D. Cal. Jan. 24, 2011) (striking affirmative defense of failure to join indispensable party with prejudice as legally insufficient); *Nat'l Satellite Sports v. Gianikos*, 2001 WL 35675430, at *2–3 (S.D. Ohio June 21, 2001) (finding complete relief can be afforded to plaintiff in the absence of the provider Time Warner).  Moreover, Plaintiff has alleged it had an exclusive contractual right to commercial distribution of the *Program*. (Complaint at ¶ 18.)  Defendants bear the burden of persuasion and they have not persuaded

the Court that DirecTV and Zuffa have any legal interest in the infringement of the *Program* or that the ability of DirecTV and Zuffa to protect any possible legal interest will be impaired or impeded if they are not joined in this matter. Accordingly, the Court finds Zuffa and DirecTV are not indispensable parties warranting dismissal of this action.

## V.     CONCLUSION & ORDER

In light of the foregoing, the Court **DENIES** Defendants' motion to dismiss Plaintiff's Complaint.

**IT IS SO ORDERED.**

**DATED:  June 10, 2014**

**Hon. Cynthia Bashant**
**United States District Judge**